UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CAMERON MAYFIELD,   ) | |
| ) | |
| Petitioner,   ) | |
| ) | |
| v.   ) | No. 2:19-cv-00466-JPH-DLP |
| ) | |
| RICHARD BROWN,   ) | |
| ) | |
| Respondent.   ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Cameron Mayfield's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case WVS 19-06-0004. For the reasons explained in this Entry, Mr. Mayfield's petition must be **denied**.

### I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

1

## II. The Disciplinary Proceeding

WVS 19-06-0004 began with the following conduct report, written on June 10, 2019, by Correctional Officer J. Thompson:

> I c/o J. Thompson on 6-10-19 @ approx 2:25 pm witnessed Offender Mayfield, Cameron # 178522 being placed in the SCU A 1100 range shower for decontamination. Offender Mayfield was escorted to B-east after his shower. O.C. contaminated clothing and feces was left in the shower for someone else to come in contact with.

Dkt. 7-1. Pictures show feces on a shower floor next to a pair of shoes and a prison jumpsuit. Dkts. 7-2, 7-3.

On June 14, 2019, Mr. Mayfield received a screening report notifying him that he was charged with violating Code 123, "Body Fluid and Fecal Waste." Dkts. 7-4, 7-18. At screening, Mr. Mayfield asked to call two correctional officers to testify about his character and Nurse C. Landis to testify regarding his medications and medical conditions. Dkt. 7-4. He also asked to present his medications as evidence. *Id.*

On June 23, 2019, Mr. Mayfield requested Officer Thompson's disciplinary record. Dkt. 7-9. That request was denied as "irrelevant to [the] conduct report or case." *Id.* On June 25, Mr. Mayfield requested a statement from Dr. Byrd or another doctor regarding the effects of his medications and how "trauma to the human body" can cause a person to defecate involuntarily, particularly after the person has taken a stool softener. Dkt. 7-10.

Nurse Landis did not testify or provided a witness statement. Nurse Wright provided a statement confirming that Mr. Mayfield was prescribed a stool softener, but she stated that he "has no diagnosis or medications that would make him defecate in the shower." Dkt. 7-12. Dr. Byrd provided a statement noting that Mr. Mayfield was prescribed Colace, a "laxative stool-softener combination" that "works synergistically to relieve constipation." Dkt. 7-11. Dr. Byrd also stated that Mr. Mayfield was prescribed Docusate, which "softens the stool leading to easier passage of

feces." *Id.* Dr. Byrd stated that Mr. Mayfield's request about trauma and involuntary defecation was "broad and vague" and that any statement on that subject "would simply be speculative at best." *Id.*

WVS 19-06-0004 proceeded to a disciplinary hearing on July 5, 2019. Dkt. 7-8. Mr. Mayfield stated that the trauma of being sprayed, combined with his stool softener, caused him to defecate involuntarily on the way to the shower. *Id.* The hearing officer considered Mr. Mayfield's statement, along with the conduct report, the witness statements that were submitted, and the pictures showing feces in the shower. *Id.* The hearing officer found Mr. Mayfield guilty and assessed sanctions, including a loss of earned credit time. *Id.* Mr. Mayfield's administrative appeals were denied. Dkt. 7-16; dkt. 7-17.

### III. Analysis

Mr. Mayfield asserts five arguments for habeas relief. Two center on the notion that the hearing officer should have accepted his explanation that he defecated involuntarily. Three are arguments that requests for evidence were wrongly denied. None of the five presents a valid basis for habeas relief.

**A.     Sufficiency of Evidence**

Mr. Mayfield argues that "insufficient evidence" supported his disciplinary conviction because the hearing officer "disregard[ed]" his explanation that the pepper spray and his medications caused him to defecate involuntarily. Dkt. 1 at 3. Mr. Mayfield further states that Officer Thompson instructed him "to clean up his clothing and feces inside of the shower," but this fact was omitted from the conduct report. Dkt. 10 at 11. Mr. Mayfield adds that he was "unable to even clean up the clothing and feces because he was temporar[ily] blind from the chemical agent that was applied in bad faith." *Id.* at 9.

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added). *See also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

An inmate violates Code 123 by "[p]lacing body fluid or fecal waste in a location unintended for the hygienic disposal of body fluid or fecal waste." Dkt. 7-18 at § 123. The conduct report and photographs are evidence supporting the hearing officer's conclusion that Mr. Mayfield placed feces in the shower, which is a location unintended for hygienic disposal of feces. Under the "some evidence" standard, this evidence is sufficient to support the hearing officer's decision. So long as some evidence supports the hearing officer's decision, the Court may not "reweigh the evidence" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)). Mr. Mayfield was free to present his explanation to the hearing officer, but the hearing officer was not obligated to accept it. She did not deny Mr. Mayfield due process by finding him guilty based on other evidence in the record.

### B.   Impartiality of Hearing Officer

Mr. Mayfield also asserts that, by disregarding his explanation that he defecated involuntarily, the hearing officer "conducted a partial disciplinary hearing." Dkt. 1 at 3. A prisoner in a disciplinary action has the right to be heard by an impartial decision-maker. *Hill*, 472 U.S. at

454. "A 'sufficiently impartial' decision-maker is . . . necessary, in order to shield the prisoner from the arbitrary deprivation of his liberties." *White v. Indiana Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001).

Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Moreover, "the constitutional standard for impermissible bias is high." *Piggie*, 342 F.3d at 666. The presumption is overcome—and an inmate's right to an impartial decision-maker is breached— in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

There is no indication that the hearing officer was involved in the incident underlying Mr. Mayfield's disciplinary charge or in investigating the incident. Mr. Mayfield essentially asserts that the hearing officer was biased against him because she rejected his argument and found him guilty. He has not identified any action by the hearing officer that amounts to a violation of his due process rights.

**C.     Denial of Evidence**

Mr. Mayfield argues that he was wrongly denied evidence from Nurse Landis, Officer Thompson, and Dr. Byrd. Due process entitled Mr. Mayfield to a limited opportunity to present evidence to an impartial decision-maker. *Hill*, 472 U.S. at 454; *Wolff* at 563–67. The right to present evidence is limited to "material exculpatory evidence." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

As the petitioner, Mr. Mayfield faces the burden of establishing that the evidence he was denied was material and exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness).

As explained below, none of the evidence Mr. Mayfield identifies was material or exculpatory. As a result, the denial of his requests did not deprive him of due process.

### 1. Nurse Landis

At screening, Mr. Mayfield asked to call Nurse Landis to testify regarding his medications and medical conditions. Dkt. 7-4. Nurse Landis did not testify at the disciplinary hearing or provide a written statement. However, Nurse Wright and Dr. Byrd both provided written statements identifying Mr. Mayfield's medications, and Dr. Byrd's statement explained the effects of those medications. Dkts. 7-11, 7-12. The information Mr. Mayfield sought to present by calling Nurse Landis still ended up in front of the hearing officer; it was merely presented by different witnesses. Mr. Mayfield has not explained what additional information Nurse Landis could have provided if she was called to testify at the disciplinary hearing—much less how that information would have undermined the case against him. Mr. Mayfield has not carried his burden of establishing that any evidence from Nurse Landis would have been material or exculpatory.

### 2. Officer Thompson's Disciplinary Record

Mr. Mayfield asserts that he was denied due process because his request for Officer Thompson's disciplinary record was denied. Dkt. 7-9. Mr. Mayfield explains that he requested this evidence "to get a better understanding" of Officer Thompson's "infraction history on his Officer

prison record." Dkt. 10 at 12. But Mr. Mayfield has not explained how Officer Thompson's infraction history would be relevant to WVS 19-06-0004.

Mr. Mayfield was charged with leaving feces in the shower. He admits that he did so. No evidence in Officer Thompson's personnel record would undermine the undisputed fact that Mr. Mayfield committed the actions of which he was accused.

### 3. Dr. Byrd

Dr. Byrd declined in his written statement to answer Mr. Mayfield's questions about the possibility that the pepper spray and his medication caused him to defecate involuntarily. Dkt. 7-11. Mr. Mayfield argues that the hearing officer denied him due process by refusing to allow him to ask follow-up questions to Dr. Byrd on that subject. Dkt. 10 at 12.

Even if Dr. Byrd appeared at the disciplinary hearing and testified exactly in line with Mr. Mayfield's defense—that Mr. Mayfield defecated involuntarily due to the pepper spray and his medications—Mr. Mayfield has not provided any reason to find that this testimony would undermine his guilt or lead the hearing officer to a different decision. Mr. Mayfield was not disciplined for defecating—intentionally or otherwise. He was disciplined for leaving feces in the shower. Mr. Mayfield admits that he did just that. Accordingly, the Court cannot find that any further questioning of Dr. Byrd would have yielded material or exculpatory evidence.

## IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Mr. Mayfield's petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles him to the relief he seeks. Accordingly, Mr. Mayfield's petition for a writ of habeas corpus must be **DENIED** and the action **dismissed with prejudice.** Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 6/10/2020

Distribution:

CAMERON MAYFIELD
178522
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Frances Hale Barrow
INDIANA ATTORNEY GENERAL
frances.barrow@atg.in.gov

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

8